UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
                                    |
KEN WIWA, <u>et al.</u>,            |
                                    |
            Plaintiffs,             |
                                    |    96 Civ. 8386 (KMW) (HBP)
      -against-                     |
                                    |    _____
ROYAL DUTCH PETROLEUM CO., <u>et al.</u>, |
                                    |
            Defendants.             |
                                    |
------------------------------------X
                                    |
KEN WIWA, <u>et al.</u>,            |
                                    |
            Plaintiffs,             |
                                    |    01 Civ. 1909 (KMW) (HBP)
      -against-                     |
                                    |
BRIAN ANDERSON,                     |
                                    |
            Defendant.              |
                                    |
------------------------------------X
                                    |
ESTHER KIOBEL, <u>et al.</u>,       |
                                    |
            Plaintiffs,             |
                                    |    02 Civ. 7618 (KMW) (HBP)
      -against-                     |
                                    |    <u>OPINION AND ORDER</u>
ROYAL DUTCH PETROLEUM CO., <u>et al.</u>, |
                                    |
            Defendants.             |
                                    |
------------------------------------X
KIMBA M. WOOD, U.S.D.J.:

    Currently before the Court is a motion for partial summary
judgment filed by Defendants Shell Petroleum, N.V., Shell
Transport and Trading Company, Ltd., and Brian Anderson
(collectively, "Defendants") affecting claims and plaintiffs in

1

the three above-captioned cases.  Defendants argue that the Court should dismiss plaintiffs' claims that are based on alleged harm to third parties because the plaintiffs who bring these claims were not administrators or executors of these third parties' estates at the time plaintiffs commenced their claims against Defendants.  The claims at issue in this motion include (1) state law claims for damages resulting from the death of a relative ("state wrongful death claims"), (2) state tort law claims based on non-fatal injuries suffered by a relative ("state survival claims"; collectively with state wrongful death claims, "third-party state law claims"), and (3) federal law claims brought under the Alien Tort Statute, 28 U.S.C. § 1350, based on harm suffered by a relative killed in violence for which Defendants are allegedly liable ("third-party ATS claims"; collectively with third-party state law claims, "third-party claims").

Plaintiffs in Wiwa v. Royal Dutch Petroleum Co. ("Wiwa I" Plaintiffs) and Wiwa v. Anderson ("Wiwa II" Plaintiffs; collectively with Wiwa I Plaintiffs, "Wiwa" Plaintiffs) argue, as an initial matter, that Defendants have waived their arguments with respect to certain Wiwa Plaintiffs' third-party claims because Defendants failed to raise these arguments in previous motions and pleadings.  Wiwa Plaintiffs, as well as Plaintiffs in Kiobel v. Royal Dutch Petroleum Co. ("Kiobel" Plaintiffs; collectively with Wiwa Plaintiffs, "Plaintiffs"), further argue

2

that, to the extent that Defendants' arguments are not waived,
Plaintiffs may still properly assert their third-party claims
under applicable law. Finally, Plaintiffs argue that, should the
Court find that Plaintiffs' third-party claims are defective, the
Court should grant them leave to ratify, join, or substitute the
real parties in interest pursuant to Federal Rule of Civil
Procedure 17(a)(3) ("join the real parties in interest").[1]

For the reasons set forth below, (1) none of Defendants'
arguments are deemed waived; (2) Defendants are GRANTED leave
under Rule 15(a) to amend their answers in _Wiwa I_ and _Wiwa II_ to
properly challenge _Wiwa_ Plaintiffs' capacity to bring their
third-party state law claims; (3) Plaintiffs are GRANTED leave to
join the real parties in interest under Rule 17(a)(3), and (4)
Defendants' motion for partial summary judgment is DENIED,
without prejudice and with leave to refile if Plaintiffs have not
joined the real parties as set out in the Conclusion to this
Opinion and Order.[2]

---

[1] _Kiobel_ Plaintiffs do not request leave to join the real party.
(_Kiobel_ Opp'n.) However, Rule 17(a)(3) does not require a party to
seek a court's leave; instead, the rule cautions that "[t]he court may
not dismiss an action for failure to prosecute in the name of the real
party in interest," until allowing a reasonable time for the real
party to be joined. Fed. R. Civ. P. 17(a)(3). Accordingly, the Court
also considers whether to allow third-party _Kiobel_ Plaintiffs leave to
join the real parties in interest.

[2] The Notice of Motion for Defendants' Motion for Partial Summary
Judgment is dated May 20, 2004. Due to a docketing error, however,
Defendants' motion appeared on the Court's docket only as of November
9, 2007. (96 Civ. 8386 D.E. ("96-D.E.") 224.) Upon the proper
docketing of the motion, Plaintiffs requested leave to submit

**BACKGROUND**

## I.  THE PARTIES.

### A.  *Plaintiffs.*

The Wiwa Plaintiffs who bring third-party claims are Ken Wiwa Jr., Blessing Kpuinen, Lucky Doobee, Friday Nuate, Monday Gbokoo, David Kiobel, and James N-nah (the "Third-Party Wiwa Plaintiffs").  The Kiobel Plaintiffs who bring third-party claims are Esther Kiobel and Kpobari Tusima (the "Third-Party Kiobel Plaintiffs"; collectively with the Third-Party Wiwa Plaintiffs, the "Third-Party Plaintiffs").

### B.  *Defendants.*

Wiwa I and Kiobel Plaintiffs sue Shell Petroleum, N.V., and Shell Transport and Trading Company, Ltd., two European oil companies that Plaintiffs allege were involved with the Nigerian government's perpetration of a host of human rights violations

---

supplemental briefing on issues that had arisen since the motion was initially submitted.  The Court granted Plaintiffs' request November 20, 2007.  (96-D.E. 230.)  Wiwa Plaintiffs filed a Supplemental Brief in Opposition to Defendants' Motion for Partial Summary Judgment ("Wiwa Supplemental Brief") on December 20, 2007.  (96-D.E. 233.) Defendants replied, without seeking leave of the Court, by letter dated January 7, 2008 ("Defendants' Letter Reply").  Wiwa Plaintiffs sur-replied, also without leave of the Court, by letter dated January 11, 2008 ("Wiwa Letter Sur-Reply").  The Court considers the Wiwa Supplemental Brief and Letter Sur-Reply, as well as Defendants' Letter Reply, to the extent that these present arguments to which the opposing party has had an opportunity to respond.  Cf. Patterson v. Balsamico 440 F.3d 104, 114 n.5 (2d Cir. 2006) (noting that the court "generally will not consider arguments raised for the first time in a reply brief").

against Plaintiffs and their relatives.[3] <u>Wiwa II</u> Plaintiffs sue

Brian Anderson ("Anderson"), the former managing director of

SPDC, an entity related to the two oil companies sued in <u>Wiwa I</u>

and <u>Kiobel</u>.

## II.  **THIRD-PARTY CLAIMS.**

### A.  *Third-Party State Law Claims.*

Only <u>Wiwa</u> Plaintiffs bring third-party state law claims.

Plaintiffs Wiwa Jr. and Kpuinen assert the only state wrongful

---

[3] The Court notes that the entities now being sued in <u>Kiobel</u> and <u>Wiwa I</u> differ from those currently named as defendants in those actions.  The <u>Kiobel</u> Amended Complaint, dated May 14, 2004, names the following entities as defendants: (1) Royal Dutch Petroleum Company, (2) Shell Transport and Trading, p.l.c., and (3) Shell Petroleum Development Company of Nigeria Limited ("SPDC").  (<u>Kiobel</u> Am. Compl. ¶¶ 18-20.)  The Court has dismissed the claims against SPDC for lack of personal jurisdiction (Opinion and Order, March 4, 2008, 02 Civ 7618 D.E. ("02-D.E.") 188).  Moreover, since the <u>Kiobel</u> Amended Complaint was filed, the identities of the remaining named defendants have changed as follows: (1) Royal Dutch Petroleum Company "merged with its subsidiary Shell Petroleum, N.V., with Shell Petroleum, N.V. as the survivor" (Answer to <u>Kiobel</u> Am. Compl., n.1, 02-D.E. 158), (2) Shell Transport and Trading, p.l.c., "changed its legal form and is now known as Shell Transport and Trading Company, Ltd." (<u>id.</u>).  Thus, the Court will treat Shell Petroleum, N.V., and Shell Transport and Trading Company, Ltd., as defendants in <u>Kiobel</u> for the purposes of this motion.
    The <u>Wiwa I</u> Fourth Amended Complaint purports to add Royal Dutch Shell, p.l.c., as a defendant in <u>Wiwa I</u>.  (<u>Wiwa I</u> Fourth Am. Compl. ¶ 19.)  Plaintiffs state that this entity is properly added as a defendant because this entity acquired the corporate predecessors of Defendants Shell Petroleum, N.V., and Shell Transport and Trading Company, Ltd.  (<u>Wiwa I</u> Fourth Am. Compl. 2 n.1.)  The Court disagrees. The Court did not grant Plaintiffs leave to add a new party to the action, nor have the current defendants consented to such an addition (Answer to <u>Wiwa I</u> Fourth Am. Compl. 1 n.1).  Until defendants consent or the Court grants Plaintiffs leave to add a new party, only Shell Petroleum, N.V. and Shell Transport and Trading Company, Ltd., are properly named as defendants in <u>Wiwa I</u>.  <u>See</u> Fed. R. Civ. P. 15(a)(2) (2008) (stating that a party may amend its pleadings "with the opposing party's written consent or the court's leave").

death claims that remain in this litigation.[4]  The third-party

state survival claims that remain are: (1) the (a) assault and

battery, (b) intentional infliction of emotional distress, (c)

negligent infliction of emotional distress, and (d) negligence claims

that Plaintiffs Wiwa Jr. and Kpuinen bring against all Defendants, and

(2) the (a) negligent infliction of emotional distress, and (b)

negligence claims that Plaintiffs Doobee, Nuate, Gbokoo, and David

Kiobel bring against Defendant Anderson.[5]

### B.   *Third-Party ATS Claims*

Both <u>Wiwa</u> and <u>Kiobel</u> Plaintiffs bring third-party ATS

claims.[6]  Third-Party <u>Wiwa</u> Plaintiffs assert the following third-party

ATS claims against the Defendants in <u>Wiwa I</u>: (1) summary execution,

(2) crimes against humanity, (3) torture, (4) cruel, inhuman, or

degrading treatment, (5) arbitrary arrest and detention, and (6)

---

[4]  By Order, dated September 29, 2006, the Court dismissed the
state wrongful death claims of Plaintiffs Doobee, Nuate, Gbokoo, David
Kiobel, and N-nah.  (96-D.E. 202.)

[5] In <u>Wiwa I</u>, the Court dismissed the state survival claims raised
by Plaintiffs Doobee, Nuate, Gbokoo, David Kiobel, and N-nah as barred
by the statute of limitations.  (Order, Sept. 29, 2006, 96-D.E. 202.)
In <u>Wiwa II</u>, the Court dismissed the assault and battery claims and
intentional infliction of emotional distress claims of Plaintiffs
Doobee, Nuate, Gbokoo, and David Kiobel as similarly barred by the
statute of limitations.  (<u>Id.</u>)

[6] Third-Party <u>Wiwa</u> Plaintiffs argue that they also bring certain
ATS claims in an individual capacity.  (<u>See, e.g.</u>, <u>Wiwa</u> Suppl. Br. 4
(arguing that the Third-Party Plaintiffs' Summary Execution claims are
personal claims); <u>Wiwa</u> Pls.' 56.1 Counterstatement ¶¶ 3, 8, 11, 14,
17, 20 (stating that "all plaintiffs suffered as a result of
defendants' . . . [alleged] crimes against humanity").)  However,
Defendants moved for summary judgment against only those claims
asserted by the Third-Party Plaintiffs in a representative capacity.
To the extent the Third-Party Plaintiffs assert claims in an
individual capacity, those claims are not subject to this motion.

violation of the rights to life, liberty and security of person and peaceful assembly and association. (*Wiwa I* Fourth Am. Compl. ¶¶ 121-50.) All Third-Party *Wiwa* Plaintiffs except Plaintiff N-Nah bring the same six claims against the Defendant in *Wiwa II*.[7] (*Wiwa II* Second Am. Compl. ¶¶ 80-107.)

Third-Party *Kiobel* Plaintiffs assert the following third-party ATS claims against Defendants: (1) crimes against humanity, (2) torture/cruel, inhuman and degrading treatment, and (3) arbitrary

---

[7] *Wiwa* Plaintiffs have recently contended that they are also bringing third-party claims under the Torture Victims Protection Act, 28 U.S.C. § 1350 (App.) ("TVPA"). (*See, e.g., Wiwa* Pls.' Br. on Internat'l L. Norms 5.) Although the original *Wiwa* Plaintiffs' complaints made such claims, their subsequent complaints excluded these claims. (*Compare, e.g., Wiwa I* Compl. ¶¶ 5, 91(b), 95, 103 with *Wiwa I* Fourth Am. Compl. ¶¶ 5, 119, 123, 131 and *Wiwa II* Compl. ¶¶ 4, 61(a), 64, 68, 83, 87 with *Wiwa II* Second Am. Compl., ¶¶ 5, 79, 82, 86, 90, 94, 100, 106.) Defendants argue that Plaintiffs have abandoned their TVPA claims. (Defs.' Mem. L. on Issues of Internat'l L. 29-30.)

Plaintiffs' and Defendants' briefing for this motion for partial summary judgment addresses only Plaintiffs' third-party ATS and state law claims. Accordingly, the Court does not decide herein whether Plaintiffs have abandoned their TVPA claims or, to the extent that they have not, whether they can bring any TVPA claims that are third-party claims.

However, the Court notes that "it is well established that an amended complaint ordinarily supercedes the original and renders it of no legal effect." *Dluhos v. Floating and Abandoned Vessel, Known as "New York"*, 162 F.3d 63, 68 (2d Cir. 1998) (internal quotations and citations omitted); *see also Arce v. Walker*, 139 F.3d 329, 332 n.4 (2d Cir. 1998) (declining to consider a claim not realleged or incorporated into an amended complaint).

In addition, the Court finds *Wiwa* Plaintiffs' contention regarding their supposed TVPA claims surprising. The Court produced a "Chart of Claims" in October 2008, which summarized the claims in these actions. This chart only listed ATS and state law claims. The Court asked the parties to indicate whether they disagreed with the Court's summary of the pending claims. *Wiwa* Plaintiffs raised several objections, but did not argue that the chart should also include claims they brought under the TVPA.

arrest and detention.[8] (<u>Kiobel</u> Am. Compl. ¶¶ 88-117.)

## III. PROCEDURAL HISTORY.

<u>Wiwa I</u> Plaintiffs filed their original Complaint on November 8, 1996, and have since filed four amended complaints, the most recent of which was filed on October 2, 2007. <u>Wiwa II</u> Plaintiffs filed their original Complaint on March 7, 2001, an Amended Complaint on March 27, 2002, and a Second Amended Complaint on September 15, 2003.[9] <u>Kiobel</u> Plaintiffs filed their original Complaint on September 20, 2002, and an Amended Complaint on May 17, 2004. Over the past twelve years, the parties in these related actions have engaged in extensive discovery, and have

---

[8] By Order, dated September 29, 2006, the Court dismissed all the <u>Kiobel</u> Plaintiffs' claims of (1) extrajudicial killing; (2) rights to life, liberty, security and association; (3) forced exile; and (4) property destruction, for failure to state a claim. (02-D.E. 156.) The parties have appealed aspects of this Order to the Second Circuit. A decision on that appeal is still pending.

Defendants have recently contended that because the Court dismissed <u>Kiobel</u> Plaintiffs' (1) extrajudicial killing, and (2) rights to life, liberty, security and association claims, it should also disallow those of the <u>Wiwa</u> Plaintiffs' claims that rely on similar legal theories and, for the most part, similar facts. (Letter from Thomas G. Rafferty to the Court, Oct. 7, 2008.) Defendants argue that the issue is one of the Court's subject matter jurisdiction, (Defs.' Resp. to Issues Arising out of Oct. 7, 2008 Hr'g 2-3), and thus cannot be waived. <u>See</u> <u>Moodie v. Fed. Reserve Bank</u>, 58 F.3d 879, 882 (2d Cir. 1995); Fed. R. Civ. P. 12(h)(3). The Court has granted Defendants leave to file a motion regarding the Court's subject matter jurisdiction over <u>Wiwa</u> Plaintiffs' ATS claims, (96-D.E. 311), and does not address Defendants' contention herein.

[9] <u>Wiwa II</u> Plaintiffs' Second Amended Complaint is not docketed. The Court reminds all parties that they <u>must</u> ensure that all appropriate documents are docketed. The Court's copy of this complaint was created on June 16, 2003, and was received by the Court September 10, 2003. For the purposes of this order, the Court refers to this complaint as being filed on September 10, 2003.

filed several dispositive motions.[10]

## IV.  FACTS.

As set forth in the various complaints, Plaintiffs and their relatives actively protested Defendants' oil exploration and production activities in the Ogoni region of Nigeria during the period from 1990 through 1999.  Plaintiffs allege that their lawful protests were violently suppressed by agents of the Nigerian government, and that Defendants can be held liable for this violence.  A more detailed description of the facts underlying these cases is provided in the Court's previous orders, familiarity with which is presumed.  See, e.g., Kiobel v. Royal Dutch Petroleum Co., 456 F. Supp. 2d 457 (S.D.N.Y. 2006); Wiwa v. Royal Dutch Petroleum Co., No. 96 Civ. 8386, 2002 WL 319887 (S.D.N.Y. Feb. 28, 2002).

The facts relevant to this motion for partial summary judgment involve the Third-Party Plaintiffs' representative status and are undisputed.

Third-Party Plaintiffs currently state their authority to bring their third-party claims in the following ways:

(1) Ken Wiwa Jr. files suit "on behalf of his deceased

_____

[10] By Order dated October 24, 2008, the Court directed Kiobel Plaintiffs to complete fact discovery but stayed all further proceedings in that case pending the Second Circuit Court of Appeals' resolution of an interlocutory appeal in Kiobel.  (02-D.E. 203.)  The Court hereby clarifies that its stay of the proceedings in Kiobel does not reach this motion, which was already pending before the Court at the time the stay was granted.

father, Ken Saro-Wiwa, and as representative of the estate of his father, Ken Saro-Wiwa, now deceased" (<u>Wiwa I</u> Fourth Am. Compl. ¶ 7);

(2) Blessing Kpuinen files suit as "administrator of the estate of her husband, John Kpuinen, now deceased" (<u>id.</u> ¶ 9);

(3) Lucky Doobee files suit "on behalf of his brother, Saturday Doobee, now deceased" (<u>id.</u> ¶ 12);

(4) Friday Nuate files suit "on behalf of her husband, Felix Nuate, [now deceased,] and their surviving children" (<u>id.</u> ¶ 13);

(5) Monday Gbokoo files suit "on behalf of his brother, Daniel Gbokoo, now deceased" (<u>id.</u> ¶ 14);

(6) David Kiobel files suit "on behalf of his siblings, Stella Kiobel, Leesi Kiobel, and Baridi Kiobel, and on behalf of his minor siblings, Angela and Godwill, for harm suffered for the death of their father Dr. Barinem Kiobel" (<u>id.</u> ¶ 15);

(7) James N-nah files suit "on behalf of his late brother, Uebari N-nah" (<u>id.</u> ¶ 16);[11]

---

[11] The <u>Wiwa II</u> Second Amended Complaint, which was filed on September 10, 2003 and which includes some of the same Third-Party Plaintiffs as the <u>Wiwa I</u> Fourth Amended Complaint, describes several of these Third-Party Plaintiffs' status in different terms than are used in the <u>Wiwa I</u> Fourth Amended Complaint. Specifically, the <u>Wiwa II</u> Second Amended Complaint states that Plaintiffs Wiwa Jr., Doobee, Nuate, and Gbokoo bring these lawsuits as administrators or executors of their relatives' estates. (<u>Wiwa II</u> Second Am. Compl. 1, caption, ¶

(8) Esther Kiobel files suit "on behalf of her late husband, Dr. Barinem Kiobel" (<u>Kiobel</u> Am. Compl. ¶ 6); and

(9) Kpobari Tusima files suit "on behalf of his late father, Clement Tusima" (<u>id.</u> at 1, caption).

Despite the variety of ways they describe their representative status, all Third-Party Plaintiffs concede that, when they first filed their third-party claims against Defendants, the New York State Surrogate's Court for the County of New York ("Surrogate's Court") had not appointed any of them as administrators or executors of their deceased relatives' estates.[12]  (<u>Wiwa</u> Opp'n 10 n.11; <u>Wiwa</u> Pls.' Local Rule 56.1 Counterstatement ¶¶ 2, 7, 10, 13, 16, 19.)  However, in the last two years, all Third-Party Plaintiffs, except for David Kiobel, Esther Kiobel, and Kpobari Tusima, have been formally granted letters of administration by the Surrogate's Court.[13]

---

13.)

[12] <u>Kiobel</u> Plaintiffs' Response to Defendants' Local Rule 56.1 Statement ("<u>Kiobel</u> 56.1 Response"), states that they deny Defendants' allegation that the Third-Party <u>Kiobel</u> Plaintiffs were not administrators or executors of the estates of the relatives on whose behalf they brought their third-party claims.  (<u>Kiobel</u> 56.1 Resp. ¶¶ 22, 24.)  However, the <u>Kiobel</u> 56.1 Response states that <u>Kiobel</u> Plaintiffs dispute the <u>legal</u>, not <u>factual</u>, accuracy of Defendants' depiction of the Third-Party <u>Kiobel</u> Plaintiffs' status.  (<u>Id.</u>; <u>see also</u> Letter from Carey R. D'Avino to Court (Sept. 2, 2008) ("D'Avino Letter") (stating that "the record on Shell's motion for partial summary judgment reflects no factual dispute" as to whether Third-Party <u>Kiobel</u> Plaintiffs had sought letters of administration for their deceased relatives' estates).)

[13] Plaintiff Kpuinen received final letters of administration over her husband's estate from the Surrogate's Court on November 1, 2007. (Decl. of Jennifer Green, Dec. 20, 2007 ("2007 Green Decl."), Ex. 11.)

**DISCUSSION**

**I.    WAIVER PURSUANT TO RULE 9(a).**

Before reaching the merits of Defendants' motion for partial summary judgment, the Court addresses _Wiwa_ Plaintiffs' contention that Defendants have waived their arguments with respect to certain Third-Party _Wiwa_ Plaintiffs' third-party claims. Specifically, _Wiwa_ Plaintiffs contend that Defendants' challenge to Third-Party _Wiwa_ Plaintiffs' third-party state law claims raises the defense of lack of capacity to sue ("capacity defense"), and that this defense has been waived with respect to certain of the Third-Party _Wiwa_ Plaintiffs because Defendants failed to raise the defense in their previous motions and pleadings.[14]  The Court finds Defendants have not waived the capacity defense.

### *A. Legal Standard*

Federal Rule of Civil Procedure 9(a) requires that the lack of capacity defense be raised "by a specific denial, which must

Plaintiffs Wiwa Jr., Doobee, Gbokoo, N-nah, and Nuate received limited or ancillary letters of administration (collectively, "letters of administration") from the Surrogate's Court on October 10 and 15, 2008.  (Decl. of Jennifer Green, Exs. 1-5, Oct. 17, 2008.)

[14] _Wiwa_ Plaintiffs claim that Defendants waived the capacity defense with respect to Plaintiffs Wiwa Jr., Kpuinen, Doobee, Nuate, Gbokoo, and N-nah, but not with respect to Plaintiff David Kiobel. (_Wiwa_ Opp'n 4-5.)  Defendants do not raise a capacity defense to Third-Party Plaintiffs' third-party ATS claims, the only kind of third-party claim that _Kiobel_ Plaintiffs bring.  Accordingly, the Court does not decide the issue of waiver with regards to Third-Party _Kiobel_ Plaintiffs.

state any supporting facts that are peculiarly within the party's knowledge." Fed. R. Civ. P. 9(a) (2008). The capacity defense is an affirmative defense,[15] and can be waived if not raised "in a timely manner, i.e., at the outset of the lawsuit." Pressman v. Estate of Steinvorth, 860 F. Supp. 171, 176 (S.D.N.Y. 1994); see also Moore's Federal Practice § 9.02[6] (3d ed. 2008).

A court may find it inappropriate to deem an affirmative defense, such as the capacity defense, waived when "the defense is raised at the first pragmatically possible time and applying it at that time would not unfairly prejudice the opposing party."[16] Rose v. Amsouth Bank of Fla., 391 F.3d 63, 65 (2d Cir.

---

[15] See Vishipco Line v. Chase Manhattan Bank, N.A., 660 F.2d 854, 861 n.3 (2d Cir. 1981); In re Ski Train Fire in Kaprun, Austria on Nov. 11, 2000, 257 F. Supp. 2d 717, 727 n.13 (S.D.N.Y. 2003).

[16] Wiwa Plaintiffs contend that waiver is proper where a defendant fails to raise the capacity defense during the initial stages of litigation. (Wiwa Opp'n 2 (citing cases).) However, the cases cited by the Wiwa Plaintiffs do not support this proposition.
   In two of the cited cases, courts found a capacity defense waived because it was insufficiently pleaded in defendants' answers, not because it was raised too late in the litigation. See Pressman, 860 F. Supp. at 176; NAACP Labor Comm. v. Laborers' Int'l Union, 902 F. Supp. 688, 698-99 (W.D. Va. 1995). In fact, in NAACP Labor Comm., the court noted that despite defendants' delay in raising the issue, the court had discretion under Rule 15(a) to permit defendants to amend their answers to comply with Rule 9(a). 902 F. Supp. at 699; see also 5A Wright & Miller, Federal Practice & Procedure, § 1295 (3d ed. 2007) (noting that waiver under Rule 9(a) is "subject, of course, to the liberal pleading amendment policy of Rule 15"). Cf. Monahan v. New York Dept. of Corr., 214 F.3d 275, 284 (2d Cir. 2000) (holding that district court has the discretion to treat an affirmative defense raised for the first time in a motion for summary judgment as a Rule 15(a) motion to amend defendants' answer).
   The other case cited by Wiwa Plaintiffs, De Saracho v. Custom Food Mach., Inc., 206 F.3d 874, 878-79 (9th Cir. 2000), is distinguishable. In De Saracho, the court found defendants had waived the capacity defense because they had raised the defense just one week

2004) (internal quotations omitted); see also Curry v. City of Syracuse, 316 F.3d 324, 331 (2d Cir. 2003) (finding waiver inappropriate where an affirmative defense was not raised until summary judgment because plaintiff was not prejudiced); Gardner by Gardner v. Parson, 874 F.2d 131, 139 n.12 (3d Cir. 1989) (holding waiver of capacity defense inappropriate where considering it caused no undue prejudice to the opposing party); Asbestos Workers Syracuse Pension Fund by Collins v. M.G. Indus. Insulation Co., Inc., 875 F. Supp. 132, 137-38 (N.D.N.Y. 1995) (considering capacity defense despite its absence from defendant's answer because no prejudice would result to plaintiff).[17]

In this case, the Court does not deem the capacity defense waived because (1) Defendants raised the defense at the first pragmatically possible time, and (2) Wiwa Plaintiffs would suffer no unfair prejudice if the Court were to apply the defense at this time.[18]

---

before the scheduled trial, yet discovered the relevant facts several months earlier. In Wiwa, Defendants promptly raised the capacity defense shortly after the completion of discovery on the capacity issue.

[17] Because the Court does not base its decision regarding the appropriateness of waiver on whether Defendants should have relied on the allegations Wiwa Plaintiffs set forth in their complaints regarding their representative status, the Court does not reach Wiwa Plaintiffs' arguments on this point. (Opp'n 4 n.3).

[18] Because the Court concludes that waiver of the capacity defense would be improper in this case, the Court does not address Defendants' alternative argument that Rule 9(a) is otherwise inapplicable. (Wiwa

**B.    Defendants Raised the Capacity Defense at the First Pragmatically Possible Time.**

The Court finds that Defendants raised the capacity defense promptly after discovering that the Third-Party _Wiwa_ Plaintiffs were not administrators or executors of their relatives' estates.

The first five complaints filed in the _Wiwa_ cases consistently alleged that Plaintiffs Wiwa Jr. and Kpuinen were the administrators or executors of their relatives' estates.[19] (_Wiwa I_ Compl. ¶¶ 7, 9, Nov. 8, 1996; _Wiwa I_ Am. Compl. ¶¶ 7, 9, Apr. 29, 1997; _Wiwa II_ Compl. ¶¶ 6, 8, Mar. 5, 2001; _Wiwa I_ Second Am. Compl. ¶¶ 7, 9, Mar. 27, 2002; _Wiwa II_ Am. Compl. ¶¶ 6, 8, Mar. 27, 2002.)  In September 2003, _Wiwa_ Plaintiffs filed two further complaints that similarly alleged that these two plaintiffs were administrators or executors.  (_Wiwa I_ Third Am. Compl. ¶¶ 7, 9; _Wiwa II_ Second Am. Compl. ¶¶ 7, 9.)

The September 2003 _Wiwa_ complaints also added Plaintiffs Doobee, Nuate, Gbokoo, David Kiobel, and N-nah to the litigation. _Wiwa_ Plaintiffs alleged that all of these newly-added plaintiffs, except Plaintiff David Kiobel, were administrators or executors of their relatives' estates.[20]  (_Wiwa I_ Third Am. Compl. caption

_____

Reply 2-3.)

[19] Only Plaintiffs Wiwa Jr. and Kpuinen were parties to this litigation at the time the first five complaints were filed in _Wiwa I_ and _Wiwa II_.

[20] The complaints alleged that Plaintiff David Kiobel brought his claims "individually and on behalf of" various relatives, but did not allege that he was the administrator or executor of a deceased

15

& ¶¶ 12-15; <u>Wiwa II</u> Second Am. Compl. ¶¶ 11-14.)  Defendants
subsequently moved to dismiss Plaintiff David Kiobel's state
wrongful death claim on the ground that he was not the
administrator or executor of his relative's estate.[21]  (96-D.E.
87.)

    While this motion to dismiss was pending, the parties
engaged in discovery regarding whether the other Third-Party <u>Wiwa</u>
Plaintiffs were administrators or executors as alleged.  (<u>Wiwa</u>
Opp'n 4 n.3; <u>Wiwa</u> Reply 2-3.)  This discovery raised doubts as to
whether Third-Party <u>Wiwa</u> Plaintiffs had received letters of
administration for, or had been named executors of, their
relatives' estates.[22]  Shortly thereafter, Defendants filed this
motion, raising the capacity defense.[23]

_____

relative's estate.  (<u>Wiwa I</u> Third Am. Compl. ¶ 15; <u>Wiwa II</u> Second Am.
Compl. ¶ 14.)

    [21] The Court granted Defendants motion to dismiss David Kiobel's
wrongful death claim by Order, dated September 29, 2006, and denied
<u>Wiwa</u> Plaintiffs leave to amend his wrongful death claim because the
Court found the claim incurably barred by the statute of limitations.
(96-D.E. 202.)

    [22] For the most part, Defendants' discovery failed to produce
evidence that the Third-Party Plaintiffs were the administrators or
executors of their deceased relatives' estates.  (Defs.' 56.1
Statement ¶¶ 5, 7, 10, 13, 16.)  In the case of Plaintiff Wiwa Jr.,
Defendants' discovery indicated that a non-Plaintiff was the
administrator or executor of his deceased father's estate.  (K. Wiwa
Dep. 36:5-15, Dec. 17, 2003 (Decl. of Michael T. Reynolds, May 20,
2004 ("Reynolds Decl."), Ex. 1); Reynolds Decl. Exs. 3, 5.)

    [23] Defendants argue, in the alternative, that they first raised
the capacity defense in their Answers, filed April 18, 2002.  (<u>Wiwa I</u>
Answer, Apr. 18, 2002 (96-D.E. 61), <u>Wiwa II</u> Answer, Apr. 18, 2002 (01
Civ. 1909-D.E. ("01-D.E.") 19).)  However, these Answers stated only
that Defendants were without "knowledge or information sufficient to

Defendants therefore raised the capacity defense at the first pragmatically possible point in the litigation: upon discovering facts suggesting that Third-Party <u>Wiwa</u> Plaintiffs did not have the legal status they alleged in their complaints.[24] See <u>Animazing Entm't, Inc. v. Louis Lofredo Assocs., Inc.</u>, 88 F. Supp. 2d 265, 268 (S.D.N.Y. 2000) (noting that waiver would be improper where a capacity defense was raised promptly after discovery of facts giving rise to the defense).

### C. No Unfair Prejudice to Plaintiffs.

The Court also finds that Plaintiffs would suffer no unfair prejudice if the Court were to allow Defendants to assert the capacity defense at this time.

In determining whether a plaintiff would be unfairly prejudiced by a defendant belatedly raising the capacity defense, courts look to several factors. First, they consider whether,

---

form a belief" as to Third-Party <u>Wiwa</u> Plaintiffs' capacity to bring suit. (<u>Wiwa I</u> Answer ¶¶ 7, 9; <u>Wiwa II</u> Answer ¶¶ 6, 8.) Such general denials of capacity do not constitute a "specific denial" as required by Rule 9(a). <u>See</u> Wright & Miller, <u>supra</u>, § 1294. Thus, Defendants only properly raised the capacity issue by this motion.

[24] Plaintiffs contend that Defendants could have raised the capacity defense, or at least sought discovery on the capacity issue, at an earlier stage in the litigation. (<u>Wiwa</u> Opp'n 4 n.3.) However, the early stages of this litigation were devoted primarily to forum and jurisdictional issues, and discovery at that time was accordingly limited to these issues. The capacity issue came to the forefront of the litigation only when Plaintiffs indicated that David Kiobel was not the administrator or executor of his father's estate. Thus, although it may have been <u>possible</u> for Defendants to have raised the capacity defense at an earlier point in this litigation, the Court concludes that Defendants raised the capacity defense at the first <u>pragmatically possible</u> time.

once a defendant raises a post-answer affirmative defense, the plaintiffs have an opportunity to fully brief the issue. See Curry, 316 F.3d at 331 (finding no undue prejudice to plaintiff where he had an adequate opportunity to brief an affirmative defense once defendant raised it); see also Asbestos Workers, 875 F. Supp. at 137-38. Second, courts consider when, subsequent to the answer, the affirmative defense was raised. "An objection raised in the early stages of litigation and prior to the onset of trial is far less likely to cause prejudice than one raised on the eve of trial." Asbestos Workers, 875 F. Supp. at 137. Third, courts consider whether the plaintiff had access to the facts giving rise to the defense. See Monahan, 214 F.3d at 284 (finding that an affirmative defense raised for the first time during summary judgment caused no undue prejudice to plaintiffs where they had prior access to the facts underlying the defense).

Third-Party Wiwa Plaintiffs will not be unfairly prejudiced if the Court finds waiver of Defendants' capacity defense inappropriate. First, Wiwa Plaintiffs have had a full opportunity to brief the issue, including filing supplemental briefing. Second, given the protracted nature of this litigation, although Defendants raised this defense many years after the first complaint was filed against them, they nonetheless raised it well before the eve of trial. In May 2004, when Defendants filed this motion for partial summary judgment,

18

the deadline for fact-discovery was closing but many discovery disputes remained outstanding, multiple discovery requests had yet to be responded to in full, and expert discovery had not yet begun. Finally, Third-Party <u>Wiwa</u> Plaintiffs and their counsel had access to the facts giving rise to Defendants' capacity defense.[25] Thus, Third-Party <u>Wiwa</u> Plaintiffs will not be unfairly prejudiced if the Court finds waiver inappropriate.

Accordingly, Defendants' capacity defense is not deemed waived. Pursuant to Rule 15, the Court GRANTS Defendants leave to amend their pleadings to comply with Rule 9(a). <u>See</u> <u>Monahan</u>, 214 F.3d at 284 (holding that district court can treat an affirmative defense raised for the first time in a motion for summary judgment as a Rule 15 motion to amend defendants' answer); 5A Wright & Miller, <u>Federal Practice & Procedure</u> § 1295 (3d ed. 2007) (noting that the "liberal amendment policy of Rule 15 gives trial courts the discretion to allow late denials of capacity").[26]

Having found that Defendants did not waive their capacity

---

[25] The Court addresses Plaintiffs' awareness that their representations were inaccurate at greater length, <u>infra</u> Part III.C.2.a.i. However, whether or not Third-Party <u>Wiwa</u> Plaintiffs were <u>aware</u> of these facts, they had <u>access</u> to them.

[26] "[A]bsent evidence of undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice to the opposing party, or futility," courts should grant Rule 15 leave to amend. <u>Monahan</u>, 214 F.3d at 283 (upholding amendment of answer to include affirmative defense raised for the first time in summary judgment motion). As discussed above, the Court finds no such evidence here.

defense, the Court now proceeds to the merits of Defendants'
partial summary judgment motion.

## II.  SUMMARY JUDGMENT STANDARD.

Summary judgment is appropriate where "the pleadings, the
discovery and disclosure materials on file, and any affidavits
show that there is no genuine issue as to any material fact and
that the movant is entitled to a judgment as a matter of law."
Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317,
322-23 (1986); Guilbert v. Gardner, 480 F.3d 140, 145 (2d Cir.
2007).  A genuine issue of material fact exists if there is
sufficient evidence to allow a "reasonable jury" to return a
verdict for the nonmoving party.  Anderson v. Liberty Lobby,
Inc., 477 U.S. 242, 248 (1986).

The burden of showing the absence of any genuine issue of
material fact rests with the moving party.  See Grady v.
Affiliated Cent., Inc., 130 F.3d 553, 559 (2d Cir. 1997) (citing
Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970)); see also
Celotex, 477 U.S. at 325.  Once this initial burden has been met,
the non-moving party must set forth "specific facts showing a
genuine issue for trial."  Fed. R. Civ. P. 56(e); Cifarelli v.
Village of Babylon, 93 F.3d 47, 51 (2d Cir. 1996).  At this
stage, the Court must view the evidence presented "in the light
most favorable to the non-moving party and draw all reasonable
inferences in its favor."  American Cas. Co. v. Nordic Leasing,

<u>Inc.</u>, 42 F.3d 725, 728 (2d Cir. 1994) (internal quotations omitted).

**III. ARGUMENTS ON THE MERITS.**

Defendants seek summary judgment on the Third-Party Plaintiffs' third-party state law and third-party ATS claims. Specifically, Defendants argue that because Third-Party Plaintiffs are not administrators or executors of their deceased relatives' estates, (1) Third-Party <u>Wiwa</u> Plaintiffs lack the capacity to bring, and have not satisfied a condition precedent to bringing, their third-party state law claims; and (2) all Third-Party Plaintiffs lack statutory standing to bring their third-party ATS claims.

Reviewing the evidence in the light most favorable to Plaintiffs, the Court concludes that because Third-Party Plaintiffs are not administrators or executors of their deceased relatives' estates, (1) Third-Party <u>Wiwa</u> Plaintiffs lack the capacity to bring, and have not satisfied a condition precedent to bringing, their third-party state law claims, and (2) all Third-Party Plaintiffs lack statutory standing to bring their third-party state law claims. However, the Court grants Third-Party Plaintiffs leave, pursuant to Rule 17(a)(3), to join the real parties in interest, which would cure these defects in their claims. Fed. R. Civ. P. 17(a)(3) (providing that after joining the real parties, an "action proceeds as if it had been

originally commenced by the real party in interest").

### A. Third-Party State Law Claims.

#### 1. Wrongful Death Claims.

Plaintiffs Wiwa Jr. and Kpuinen assert the only state wrongful death claims that remain in this litigation. The Court finds that under New York law, they lack the capacity to bring, and have not satisfied a condition precedent to bringing, these claims.[27] Pursuant to the New York wrongful death statute, only the "personal representative, duly appointed in this state or any other jurisdiction, of a decedent who is survived by distributees may maintain an action to recover damages for a wrongful act, neglect or default which caused the decedent's death." N.Y. Est. Powers & Trusts L. ("EPTL") § 5-4.1(1) (2008). A "personal representative" is "a person who has received letters to administer the estate of a decedent." EPTL § 1-2.13 (2008). See also Mingone v. State, 474 N.Y.S.2d 557, 560 (2d Dept. 1984) ("[a] personal representative who has received letters of administration of the estate of a decedent is the only party who is authorized to bring a . . . wrongful death action").

The requirement that a wrongful death plaintiff be a legal

---

[27] In the alternative, Defendants argue that Plaintiffs' wrongful death claims are defective because no wrongful conduct occurred in New York. (Defs.' Mem. Law 4.) This argument is without merit. See Farber v. Smolack, 20 N.Y.2d 198, 204 (N.Y. 1967) ("[t]o the extent that earlier decisions declined to give extraterritorial effect to the [New York State wrongful death] statute, they are overruled").

representative of the decedent's estate implicates not only who has capacity to bring such a claim, but also is a condition precedent to bringing such a claim. See Carrick v. Cent. Gen. Hosp., 51 N.Y.2d 242, 250 n.2 (N.Y. 1980) (finding that the absence of a duly appointed administrator does not "constitute[] a mere defect in the capacity of the named plaintiff to bring the action" but is a lack of an essential element of the action); Mingone 474 N.Y.S.2d at 559, 560-61 (affirming dismissal of wrongful death action where a plaintiff received letters of administration after serving a summons on defendants but before serving a complaint because "the action was not commenced by the personal representative"); In re Seventh Judicial Dist. Asbestos Litigation, 778 N.Y.S.2d 867, 872 (N.Y. Sup. Ct. 2004) ("the existence of a qualified administrator is not only an essential element to the statutory right to recover for a wrongful death, but indeed, is a condition precedent").

Neither Plaintiff Wiwa Jr. nor Kpuinen was in possession of letters of administration for their deceased relatives' estates at the time the Wiwa actions were filed. (Defs.' 56.1 Statement ¶¶ 2, 5; Wiwa Opp'n 10 n.11.) Thus, Plaintiffs Wiwa Jr. and Kpuinen were not the personal representatives of their relatives' estates at the time they filed their state wrongful death claims against Defendants. They therefore lacked the capacity to bring,

and lacked a condition precedent to bringing, those claims.[28]

## 2. *Survival Claims.*

The Third-Party <u>Wiwa</u> Plaintiffs' state survival claims are also defective under New York law. The New York survival statute provides that, "[n]o cause of action for injury to person or property is lost because of the death of the person in whose favor the cause of action existed. For any injury an action may be brought or continued by the personal representative of the decedent . . . ." EPTL 11-3.2(b) (2008). As is the case under the New York wrongful death statute, a "personal representative" is "a person who has received letters to administer the estate of a decedent." EPTL § 1-2.13 (2008).

New York courts have held that only the personal representative of a decedent has the capacity to bring a state survival action. <u>See</u> <u>Lichtenstein v. State</u>, 712 N.E.2d 1218, 1219 (N.Y. 1999) ("When, as here, the claim is a 'survival' action on behalf of an intestate decedent, the proper claimant can be only a duly appointed personal representative in receipt of letters of administration."); <u>see also</u> <u>Estate of Masselli v. Silverman</u>, 606 F. Supp. 341, 343 (S.D.N.Y. 1985) (finding that

_____

[28] Because a plaintiff's status as executor or administrator is a condition precedent to bringing a wrongful death claim, that Plaintiffs Kpuinen and Wiwa Jr. received letters of administration for their relatives' estates subsequent to commencing their wrongful death actions does not, by itself, cure the defect in their actions. A plaintiff must acquire letters of administration in order to <u>commence</u> a wrongful death action.

the New York survival statute "requires that all surviving actions be brought by a legally appointed representative") (citing Mogavero v. Stony Creek Dev. Corp., 385 N.Y.S.2d 899, 900 (4th Dept. 1976)).

Furthermore, a claimant's attaining personal representative status is a condition precedent to bringing an action under the state survival statute.  See, e.g., Mogavero, 385 N.Y.S.2d at 900-01 (dismissing a survival action despite plaintiff's appointment as personal representative subsequent to commencing the action); see also Mingone, 474 N.Y.S.2d at 560 (dismissing a survival action because "no administrator had been duly appointed to serve as the personal representative of the decedent's estate at the time the summons was served").

Third-Party Wiwa Plaintiffs did not possess letters of administration for their relatives' estates at the time they filed the Wiwa actions.  (Defs.' 56.1 Statement ¶¶ 2, 7, 10, 13, 16; Wiwa Opp'n 10 n.11.)  These plaintiffs were therefore not the personal representatives of their relatives' estates when they filed their state survival claims against Defendants. Accordingly, Third-Party Wiwa Plaintiffs lacked the capacity to bring, and lacked a condition precedent to bringing, their third-party state survival claims.[29]

---

[29] Because a plaintiff's status as legal representative is a condition precedent to bringing a state survival action, that all Third-Party Plaintiffs, except for Plaintiffs David Kiobel, Esther

## B.    Third-Party ATS Claims.

As described above, Third-Party Plaintiffs also bring third-party ATS claims against Defendants.  Defendants argue that Third-Party Plaintiffs lack statutory standing to assert these third-party ATS claims because these plaintiffs were not administrators or executors of their relatives' estates at the time they brought their third-party ATS claims.[30]

The Court finds that, because Third-Party Plaintiffs can acquire letters of administration from the Surrogate's Court, the Court should look to New York State law to determine their statutory standing.  For the reasons stated above, under New York State law, Third-Party Plaintiffs lack statutory standing to assert their third-party ATS claims.

"Statutory standing is a threshold issue that determines

---

Kiobel, and Kpobari Tusima, have now received letters of administration for their deceased relatives' estates, their state survival claims are still defective because they were filed prior to their receipt of these letters.

[30] Third-Party <u>Wiwa</u> Plaintiffs refer to Defendants' arguments interchangeably as a challenge to Third-Party Plaintiffs' standing and capacity to bring their third-party ATS claims.  (<u>See</u>, <u>e.g.</u>, <u>Wiwa</u> Opp'n 6.)  Statutory standing and capacity are distinct concepts. Capacity refers to a "party's personal right to litigate in federal court," 6A Wright & Miller, <u>supra</u>, § 1542, and involves an examination of factors such as the party's mental competence, infancy, or representative status, <u>Felson v. Miller</u>, 674 F. Supp. 975, 977 (E.D.N.Y. 1987).  "Statutory standing is a threshold issue that determines whether a party is properly before the court".  <u>See</u> <u>U.S. v. $8,221,877.16 in U.S. Currency</u>, 330 F.3d 141, 150 n.9 (3rd Cir. 2003). Defendants only challenge Third-Party Plaintiffs' statutory standing to bring their third-party ATS claims.  Accordingly, to the extent that <u>Wiwa</u> Plaintiffs construe Defendants' arguments as raising a capacity defense, they are mistaken.

whether a party is properly before the court".[31]   See U.S. v. $8,221,877.16 in U.S. Currency, 330 F.3d 141, 150 n.9 (3d Cir. 2003).  Because federal law is silent on the question, Courts evaluating a plaintiff's statutory standing to bring third-party ATS claims look in the first instance to state law.  See, e.g., Xuncax v. Gramajo, 886 F. Supp. 162, 190-92 (D. Mass. 1995). Only if the application of state law would defeat the purpose of an asserted federal cause of action do courts look instead to the most analogous federal statute.[32]   Id.; see also Bowoto v. Chevron Corp., No. C 99-02506, 2006 WL 2455761, at *11-12 (N.D. Cal. Aug. 22, 2006); Estate of Cabello v. Fernandez-Larios, 157 F. Supp. 2d 1345, 1357-58 (S.D. Fla. 2001); Beanal v. Freeport-McMoRan, Inc., 969 F. Supp. 362, 368 (E.D. La. 1997).

Nearly all the Third-Party Plaintiffs have received letters of administration from the Surrogate's Court.  There is no

---

[31] Statutory standing "is broadly described as a part of the prudential considerations regarding the proper limits of [federal courts'] jurisdiction," and is distinct from constitutional standing, which derives from Article III of the Constitution's "case or controversy" requirement.  Lerner v. Fleet Bank, N.A., 318 F.3d 113, 126 (2d Cir. 2003).

[32] Plaintiffs and Defendants agree that the most analogous federal statute is the TVPA.  (See Defs.' Mem. L. 6-8; Wiwa Opp'n 6-8; Kiobel Opp'n 2-4; Defs.' Wiwa Reply 9; Defs.' Kiobel Reply 1-5.)  They disagree as to (1) whether there is cause to look to the TVPA here, and (2) whether, under the TVPA, New York state or Nigerian law determines if Third-Party Plaintiffs can bring their third-party ATS claims.  (See Defs.' Mem. L. 7-8; Wiwa Opp'n 6-8; Kiobel Opp'n 4; Defs.' Wiwa Reply 9; Defs.' Kiobel Reply 1-5.)  Because the Court finds that, under the circumstances of this case, there is no cause to depart from state law, it need not reach the merits of this dispute.

evidence that those who have not received these letters cannot do so.[33]  Thus, in this instance, the application of state law to the question of who has statutory standing to bring these claims would not defeat the purpose of Third-Party Plaintiffs' third-party ATS claims.

Accordingly, New York state law should determine whether Third-Party Plaintiffs have statutory standing to bring their third-party ATS claims.

---

[33] The Court has not received notice that Third-Party Kiobel Plaintiffs have acquired New York State letters of administration. However, the only barrier to receiving such letters that these plaintiffs have identified is Plaintiff Esther Kiobel's lack of a death certificate for her deceased husband.  Third-Party Wiwa Plaintiffs have acquired their New York letters of administration despite lacking death certificates for their deceased relatives. Thus, for the purposes of these actions, the absence of a death certificate does not appear to preclude receiving New York letters of administration.  Accordingly, applying New York law in these cases does not defeat the purpose of the federal claims Third-Party Kiobel Plaintiffs assert.

Wiwa Plaintiff David Kiobel also has not, and is not, seeking New York letters of administration.  He brings his action not on behalf of a deceased relative, but on behalf of his living siblings, some of whom were minors when he first brought his claims and may or may not still be.  Although he could represent his siblings, without more, in a wrongful death action under Nigerian law, see Fatal Accident Law, Cap 52, Laws of the Eastern Nigeria § 4(2) (1963) ("Eastern Nigeria FAL"), attached as Ex. E to the Declaration of Joseph Nwobiki, Esq., Jun. 30, 2004 (permitting any member of a decedent's immediate family to bring an action "in the name or names of" other members of the decedent's immediate family), under New York law, he must acquire letters of administration for his deceased father's estate. Plaintiffs have provided no reason Mr. Kiobel cannot acquire the necessary New York letters.

That Mr. Kiobel did not acquire New York letters before commencing his action (or, for that matter, that the other Third-Party Plaintiffs did not do so) is not relevant to the analysis the parties urge.  Under that analysis, courts depart from state law because a party cannot acquire the requisite status under state law, not because a party did not.  See, e.g., Estate of Cabello, 157 F. Supp. 2d at 1357-58; Xuncax, 886 F. Supp. at 190-92.

For the purposes of this inquiry, Third-Party Plaintiffs'
third-party ATS claims can be divided into two categories: (1)
claims for damages resulting from the death of a relative ("ATS
wrongful death claims," e.g., summary execution), and (2) claims
for damages based on non-fatal injuries suffered by a deceased
relative ("ATS survival claims," e.g., crimes against humanity;
torture; cruel, inhuman, and degrading treatment; arbitrary
arrest and detention; violation of rights to life, liberty,
security, and association).

As discussed above, under New York law, only the personal
representative of a decedent may bring claims for damages
resulting from either (1) the decedent's death, or (2) non-fatal
injuries suffered by the decedent.  See Sections III.A.1 & 2,
supra.  None of the Third-Party Plaintiffs were personal
representatives of their relatives' estates at the time they
commenced these actions.  See id.  Although most Third-Party
Plaintiffs have since acquired letters of administration for
their deceased relatives, under New York State law, only those
Third-Party Plaintiffs who were administrators or executors of
their deceased relatives' estates when they commenced their
third-party ATS actions would be "properly before the court."
U.S. v. $8,221,877.16 in U.S. Currency, 330 F.3d at 150 n.9.

Accordingly, under New York State law, Third-Party
Plaintiffs lack statutory standing to bring either type of their

third-party ATS claims.

If that were the end of the Court's inquiry, the Court would grant summary judgment in Defendants' favor and dismiss Third-Party Plaintiffs' third-party state law and ATS claims. However, Third-Party Plaintiffs have requested leave to join the real parties in interest pursuant to Rule 17(a)(3). The Court finds such leave warranted.

### C. *Leave to Join the Real Parties in Interest.*

<u>Wiwa</u> Plaintiffs argue that dismissal of their third-party claims would be premature because, pursuant to Federal Rule of Civil Procedure 17(a)(3), they should be allowed a reasonable time to cure these claims' defects. (<u>Wiwa</u> Opp'n 16-17; <u>Wiwa</u> Suppl. Br. 9-10) Defendants allege that Plaintiffs have "intentionally misrepresented their status as administrators and executors" and thus that it would be inappropriate for the Court to grant Third-Party Plaintiffs leave to cure their claims under Rule 17(a)(3). (<u>Wiwa</u> Reply 7-8.) After a careful consideration of the facts before it, the Court grants Third-Party Plaintiffs leave to cure their claims by joining the real parties under Rule 17(a)(3).

### 1. *The Rule 17(a)(3) Standard.*

Rule 17(a)(3) provides that a court "may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been

allowed for the real party in interest to ratify, join, or be substituted into the action." Fed. R. Civ. P. 17(a)(3). This rule serves to "protect the defendant against a subsequent action by the party actually entitled to recover" and to "prevent forfeiture [of a plaintiff's claim] when . . . an understandable mistake has been made." Fed. R. Civ. P. 17 advisory committee's note (1966).

A district court "retains some discretion to dismiss an action where there was no semblance of any reasonable basis for the naming of the incorrect party." Advanced Magnetics, Inc. v. Bayfront Partners, Inc., 106 F.3d 11, 20 (2d Cir. 1997). However, a Rule 17(a)(3) substitution of plaintiffs "should be liberally allowed when the change is merely formal and in no way alters the original complaint's factual allegations as to the events or the participants." Id.

Accordingly, the bar for granting leave to join real parties is low. Courts should grant leave to join the real parties in interest if (1) the defect in the named plaintiffs plausibly resulted from mistake ("mistake" prong), and (2) correcting this defect would not unfairly prejudice defendants by changing the particulars of the claims against them ("prejudice" prong).[34]

---

[34] Rule 17(a)(3) does not require joinder of a different person or party; a court can instead grant the named party leave to acquire the necessary representative status. See, e.g., Brohan v. Volkswagen Mfg. Corp., 97 F.R.D. 46, 49–50 (E.D.N.Y. 1983) (finding a Rule 17(a)(3) amendment in a wrongful death action appropriate where the plaintiff, who had brought suit in an individual capacity and had subsequently

See <u>Advanced Magnetics</u>, 106 F.3d at 20-21.

A mistake in naming the real parties is plausible absent evidence of bad faith or intent to deceive. <u>See id.</u> Attorneys' mere ignorance, incompetence, or lack of diligence need not preclude granting joinder. <u>See In re Initial Public Offering Securities Litigation</u>, ("<u>Public Offering</u>") 2004 WL 3015304, at *7 (S.D.N.Y. 2004) (finding dismissal "too harsh a penalty" and allowing joinder of real parties under Rule 17(a)(3) where plaintiffs' counsel failed to investigate whether named plaintiffs had their claimed legal status); <u>Brohan</u>, 97 F.R.D. at 49 (allowing joinder where attorney made an "honest mistake" regarding the capacity requirements for a wrongful death action).

Where defendants had notice in the original complaint of the nature of the claims against them, joinder does not unfairly prejudice them. <u>See Advanced Magnetics</u>, 106 F. 3d at 20-21 (permitting joinder of the real parties where the original plaintiffs mistook their legal status and joining the real parties would result in a "virtually identical complaint" save

---

become a legal representative, sought to join herself in her representative capacity); <u>see also</u> Fed. R. Civ. P. 17 advisory committee's note (1966) (stating that Rule 17(a)(3) was adopted to "codify in broad terms the salutary principle of <u>Levinson v. Deupree</u>, 345 U.S. 648 (1953)," which granted a plaintiff who had mistakenly thought he was a proper legal representative leave to amend his complaint once he had acquired the proper representative status). This principle applies to non-Article III standing defects. <u>See Dunmore v. United States</u>, 358 F.3d 1107, 1112 (9th Cir. 2004); <u>Na Iwi O Na Kupuna O Mokapu v. Dalton</u>, 894 F. Supp. 1397, 1409 (D. Hawai'i 1995).

for the change in party); see also, Public Offering, 2004 WL
3015304, at *7 (finding joinder appropriate where defendants were
made aware of the allegations against them in the initial
complaint).

### 2. *Third-Party Plaintiffs Meet the 17(a)(3) Standard.*

The Court grants Third-Party Plaintiffs leave to join
themselves as the real parties in interest. The first prong of
Advanced Magnetics is met where, as here, there is no evidence of
bad faith or intent to deceive. 106 F.3d at 20. The second
prong of Advanced Magnetics is also met: Third-Party Plaintiffs'
complaints will remain either actually or virtually unchanged.
Id.

### a. *Mistake.*

Although Third-Party Plaintiffs have shown carelessness and
a lack of diligence regarding their representative status, there
is no evidence that they acted in bad faith. Accordingly, Third-
Party Plaintiffs meet Advanced Magnetics' "mistake" prong.

### i. *Third-Party Wiwa Plaintiffs.*

Although Third-Party Wiwa Plaintiffs have proceeded with
some carelessness and lack of diligence, the Court does not find
that they acted with an intent to deceive.

Third-Party Wiwa Plaintiffs "admit to having erred in
describing themselves as administrators" in regards to their
third-party claims. (Wiwa Opp'n 10 n.11.) There is no evidence

that this initial error was anything other than an honest mistake.[35]  Third-Party _Wiwa_ Plaintiffs subsequently failed to correct their mistake, despite amending their complaints several times.  (_See_, _e.g._, _Wiwa_ Reply 7 n.9.)  Only in response to this motion for partial summary judgment did Third-Party _Wiwa_ Plaintiffs seek leave to join the real parties in interest,[36] and only after substantial time had passed did they acquire letters of administration from the Surrogate's Court.

However, Third-Party _Wiwa_ Plaintiffs faced great hurdles and ultimately demonstrated diligence in acquiring letters of administration.  The Surrogate's Court had to undertake an analysis of its jurisdiction before issuing the first of its

---

[35] To the extent that there is evidence before the Court regarding the honesty of Third-Party Plaintiffs' mistake, it demonstrates a lack of care and perhaps confusion, but not bad faith.  At the time Plaintiff Wiwa Jr. filed his initial complaint in _Wiwa I_ there were two versions of his father's will, one of which named Plaintiff Wiwa Jr. as a co-executor of his father's estate and one of which did not.  (_Compare_ Reynolds Decl. Ex. 2 _with_ 2004 Green Decl. Ex. B.)  When he filed his original complaint, Plaintiff Wiwa Jr. was in the midst of trying to probate the will that named him as a co-executor.  (Wiwa Opp'n, 12; 2004 Green Sealed Decl. Ex. 1, at 293.)  Although he had not yet been formally appointed administrator, he had reason to believe he would be.

[36] _Wiwa_ Plaintiffs also sought leave to join the real party in 2003 when Defendants moved to dismiss Plaintiff David Kiobel's wrongful death claim because he was not (and did not claim to be) an administrator or executor of his deceased relative's estate.  (Defs.' Mot. Dismiss, 96-D.E. 87; _Wiwa_ Pls.' Corrected Opp'n 15-16.)  Defendants suggest that because the Court dismissed Plaintiff David Kiobel's wrongful death claim without granting leave to join the real party, it should deny the remaining Third-Party Plaintiffs such leave.  (Defs.' Letter Reply 3.)  However, because the Court also dismissed Plaintiff David Kiobel's wrongful death claim as incurably barred by the statute of limitations, it did not reach his request to join the real party.  (Order 9-10, 96-D.E. 202.)

34

letters to a Third-Party Wiwa Plaintiff.  (Decl. of Jennifer
Green Att. at 2, Oct. 6, 2008.)  In addition, the Surrogate Court
had to adapt its procedures to accommodate Third-Party Wiwa
Plaintiffs' "unique circumstances," including creating mechanisms
for applicants to provide sworn testimony to explain the absence
of a death certificate.  (Id. Att. at 4.)

Complying with the Surrogate Court's adapted procedures
presented its own difficulties.  Plaintiff Kpuinen's first
application stalled before the Surrogate's Court for many years,
and the other Third-Party Wiwa Plaintiffs' applications were
likewise delayed.  Third-Party Wiwa Plaintiffs had to collect
affidavits in Nigeria and have their Nigerian family members
designate these plaintiffs as their representatives.  (Decl. of
Jennifer Green ¶ 4, Sept. 1, 2008.)  All signatures on affidavits
had to then be authenticated by a United States consulate or
embassy in Nigeria, a process which ultimately required the
assistance of a member of Congress to complete.  (Id. at ¶¶ 4,
10.)

Although Third-Party Wiwa Plaintiffs' delay in acquiring
letters of administration and in seeking the Court's leave to
join the real parties in interest bespeaks a lack of diligence
and a degree of carelessness, there is no evidence indicating

that this delay was the result of bad faith.[37]  This is
especially so given Third-Party _Wiwa_ Plaintiffs ultimately
diligent and successful efforts to acquire letters of
administration.[38]  Attorneys' lack of diligence, ignorance, or
even incompetence need not preclude granting joinder.  See _Public
Offering_, 2004 WL 3015304, at *7.  Accordingly, the Court finds
that Third-Party _Wiwa_ Plaintiffs meet _Advanced Magnetic_'s
"mistake" prong. See _Advanced Magnetics_, 106 F.3d at 20.

### ii.  _Third-Party Kiobel Plaintiffs._

Third-Party _Kiobel_ Plaintiffs only bring third-party ATS

---

[37] Plaintiff Wiwa Jr. testified in 2004 that, when the will naming
a different executor for his father's estate went into effect, "[i]n
the maelstrom of things, we didn't remember that the caption had to be
changed."  (2004 Green Sealed Decl. Ex. 1, at 293.)  His attorneys
state that their error in alleging that Plaintiff Wiwa Jr. was the
executor of his father's estate was "certainly not intentional." (Wiwa
Opp'n 12.)
   Defendants allege that Third-Party _Wiwa_ Plaintiffs' errors were
intentional, which they support with references to Plaintiff Kpuinen's
1997 application for letters, _Wiwa_ Plaintiffs' repetition of the
errors in multiple complaints, as well as their delay in recognizing
and correcting these errors, despite statements that they would do so.
(_Wiwa_ Reply 7-8, 7 n.9, 8 n.11.)  Although the Court finds that these
facts demonstrate _Wiwa_ counsel's lack of diligence and carelessness,
when taken in the context of counsel's ultimately diligent and
successful efforts to acquire letters of administration for Third-
Party _Wiwa_ Plaintiffs, they do not indicate bad faith.

[38] In making its ruling, the Court is mindful of the potential
misfit between state law procedures and ATS claims.  Cf. _Tachiona v.
Mugabe_, 234 F. Supp. 2d 401, 416-17 (S.D.N.Y. 2002) (noting that while
"some aspects of international offenses may share elements with the
ordinary municipal law torts . . . in practice, the acute form of
misconduct entailed in international violations in many cases amounts
to more than mere differences in degree, and assumes differences in
kind").  Here, Third-Party _Wiwa_ Plaintiffs had to negotiate changes to
municipal law procedures to accommodate marked differences in culture
and governance.

claims.  These Plaintiffs have only recently begun the process of acquiring letters of administration from the Surrogate's Court. (D'Avino Letter 2.)  They have not previously sought these letters because they contend that Nigerian, not New York, law governs their ability to bring their third-party claims and that they are proper representatives under Nigerian law.  (Id. at 1; Kiobel Opp'n 4-5.)

    Kiobel Plaintiffs made a mistake of logic as to whether they had to acquire, or at least attempt to acquire, letters of administration from the Surrogate's Court in order to establish their statutory standing.[39]  Their error of logic was careless but there is no evidence it was made in bad faith.

    Accordingly, as with Third-Party Wiwa Plaintiffs, in the absence of evidence that Third-Party Kiobel Plaintiffs acted in bad faith or with an intent to deceive in regards to their third-party claims, the Court finds that they meet Advanced Magnetic's "mistake" prong. See Advanced Magnetics, 106 F.3d at 20.

### b. Prejudice.

    Defendants will not suffer prejudice if the Court grants all

---

[39] According to Third-Party Kiobel Plaintiffs' own papers, courts have applied foreign law to determine whether an ATS plaintiff has standing to bring a representative claim "'when the application of state law results in no remedy whatsoever.'"  (Kiobel Opp'n 3.) Third-Party Kiobel Plaintiffs make no argument that they could not qualify for letters of administration under New York law and by their own admission, they made no effort to apply for them until August 2008.  (D'Avino Letter 2.)  Thus, they have not established any basis for this court to depart from state law.

Third-Party Plaintiffs leave to join the real parties in interest. Defendants claim they have been prejudiced because they have had to litigate against plaintiffs who misstated their representative status.[40] (Wiwa Reply 4 n.7.) However, Defendants misapprehend the prejudice analysis, which is prospective rather than retrospective and focuses on whether, despite joinder of the real parties, Defendants will have had sufficient notice of the claims against them. See Advanced Magnetics, 106 F. 3d at 20-21 (permitting joinder of the real parties where doing so would result in a "virtually identical . . . complaint" save for the change in party); see also, Public Offering, 2004 WL 3015304, at *7 (finding joinder appropriate where defendants were made aware of the allegations against them in the initial complaint). Here, only the legal status of the Third-Party Plaintiffs will be altered; the factual allegations will remain unchanged. Accordingly, permitting joinder will not unduly prejudice Defendants. See Advanced Magnetics, 106 F. 3d at 20-21 (holding that Rule 17(a)(3) substitution of plaintiffs "should be liberally allowed when the change . . . in no way

---

[40] Defendants also claim prejudice because two plaintiffs, Esther Kiobel and David Kiobel, both purport to bring claims resulting from harms allegedly suffered by Barinem Kiobel. (Wiwa Reply 4 n.7.) This argument is without merit. Permitting joinder of the real party will require these plaintiffs to acquire letters of administration for Barinem Kiobel's estate from the Surrogate's Court in order for their claims to proceed. If they do so, the Surrogate's Court will resolve who is the proper legal representative. Accordingly, to the extent that these overlapping claims have prejudiced Defendants, allowing joinder will resolve rather than exacerbate it.

alters the original complaint's factual allegations").

### c. Conclusion.

Under Advanced Magnetics, the Court has broad discretion to grant joinder and narrow discretion to refuse it. Here, the Third-Party Plaintiffs, many of whom live in Nigeria, face unique challenges meeting the requirements of New York law. They lack death certificates, have to transmit documents and signatures gathered in rural Nigeria to New York, and need to authenticate affidavits in remote and often unresponsive embassies. Furthermore, Third-Party Plaintiffs would be greatly prejudiced should the Court dismiss their third-party state and ATS claims. The statutes of limitations on Third-Party Wiwa Plaintiffs' third-party state law claims have long since expired. Even if all Third-Party Plaintiffs were able to bring their third-party claims in a new action, they would lose the significant investment the parties (not to mention the Court) has already made in these actions, including voluminous motion practice and discovery.

The prejudice that Third-Party Plaintiffs would face if their claims were dismissed, the absence of evidence that they acted in bad faith, and the lack of prejudice Defendants will experience if the Court grants Third-Party Plaintiffs leave to join the real parties in interest, all weigh in favor of granting leave. Despite counsel for Third-Party Wiwa Plaintiffs'

pronounced lack of diligence in accurately stating and remedying their clients' legal status, it would be "too harsh a penalty" to dismiss Third-Party Plaintiffs' third-party state law and ATS claims. Public Offering, 2004 WL 3015304, at *7. Accordingly, the Court grants Third-Party Plaintiffs leave to join the real parties in interest under Rule 17(a)(3).

**CONCLUSION**

For the reasons set forth above, the Court GRANTS Defendants leave, under Rule 15(a), to amend their answers in Wiwa I and Wiwa II to raise the defense of lack of capacity. The Court also GRANTS Third-Party Plaintiffs' leave to join the real parties in interest under Rule 17(a)(3). Defendants' motion for partial summary judgment, 96-D.E. 224, is DENIED without prejudice and with leave to refile if Third-Party Plaintiffs do not join the real parties in interest as follows: (1) Third-Party Wiwa Plaintiffs must join the real parties in interest by March 16, 2009, and (2) when the Court lifts the stay in the Kiobel proceedings, Third-Party Kiobel Plaintiffs must join the real parties in interest within ten business days of the Court's order lifting the stay.

SO ORDERED.

Dated:    New York, New York
          February **23**, 2009

_____
          Kimba M. Wood
United States District Judge